IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CALVIN PALMER,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                )    No.  11-1359-T
                                  )
COMMISSIONER OF                   )
SOCIAL SECURITY,                  )
                                  )
        Defendant.                )

ORDER AFFIRMING DECISION OF COMMISSIONER

Plaintiff has filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held March 11, 2011.

On March 28, 2011, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The appeals council affirmed the ALJ's decision. This decision became the Commissioner's final decision. Plaintiff filed this action, requesting reversal of the decision

of the Commissioner or a remand. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g), and whether the correct legal standards were applied. See Lindsley v. Commissioner, 560 F.3d 601, 604–08 (6th Cir. 2009); Kyle v. Commissioner, 609 F.3d 847, 854 (6th Cir. 2010).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. See Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). A reviewing court must defer to findings of fact by an appeals council when those findings conflict with the factual findings of the ALJ. Id. at 545.

Plaintiff was born on August 10, 1964, and was forty-six years old on the date of the ALJ's decision. R. 10, 49. He has a twelfth-grade education and past work as a line worker,

machine operator, and truck driver. R.43-44, 157, 164-71. Plaintiff alleges that he became disabled on September 3, 2007, due to hemorrhoids, foot pain, hearing loss, knee pain, and low back pain. R. 34-35, 38-40, 156.

In his decision, the ALJ enumerated the following findings: (1) Plaintiff met the disability insured status requirements through September 30, 2012; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; (3) Plaintiff has severe impairments of intractable plantar keratosis, corns and hammertoes of the feet, and chronic low back pain; however, he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a) except that he is limited to lifting and carrying less than ten pounds frequently and standing and walking for about two hours out of the day with normal breaks; he has no limitations in sitting;(5) Plaintiff's residual functional capacity precludes performance of his past relevant work; (6) Plaintiff was born on August 10, 1964, and was forty-three years old on the alleged disability onset date, which is defined as a younger individual age 18-49; (7) Plaintiff has at least a high school education and is able to communicate in English; (8) Transferability of skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills; (9) Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform; (10) Plaintiff was not under a "disability" as defined in the Act at any time through the date of this decision. R. 12 - 20.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. <u>Born v. Secretary</u>, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that she is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. <u>Id.</u>

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(a)(4); Howard v. Commissioner, 276 F.3d 235, 238 (6th Cir. 2002). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis proceeded to the fifth step. The ALJ found that Plaintiff could not perform his past relevant work but that there were other jobs in the national economy that exist in substantial number that he can perform.

Plaintiff argues that the ALJ's determination that he retains the residual functional capacity to perform work other than his past relevant work is not supported by substantial evidence. He specifically objects to the ALJ's finding that he can stand and/or walk for two hours in an eight-hour workday. According to Plaintiff, the ALJ arbitrarily accepted the opinion of Robert Adams, M.D., with respect to his ability to stand and walk, and the opinion of Robert Sanner, M.D., with respect to his ability to sit. Plaintiff's arguments are not persuasive.

Dr. Adams and Dr. Sanner performed one-time consultative examinations; thus neither opinion is entitled to any special weight or consideration. See 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2). Furthermore, an ALJ need not "give good reasons" for the weight he assigns opinions from physicians who, like Dr. Adams and Dr. Sanner, have examined but not treated a claimant. See Ealy v. Commissioner, 594 F.3d 504, 514 (6th Cir. 2010).

The ALJ's residual functional capacity finding at issue is as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he is limited to lifting and carrying less than 10 pounds frequently (1/3 to 2/3 of the time), standing and walking for 2 hours out of the day with normal breaks, and sitting with no limits.

R. 13-14. In making this finding, the ALJ reasoned that:

> The opinions of Dr. Sanner and Adams are nearly identical with only slight differences in the exertional categories. The undersigned accepts Dr. Sanner's opinion regarding lifting or carrying as it is the more restrictive of the two; thus, giving the claimant the benefit of the doubt regarding his foot and back pain. Additionally, Dr., Sanner's opinion that the claimant can sit with no restrictions is accepted over Dr. Adams opinion that he could sit less than about 6 hours, as Dr. Adams based this on the reported history of hemorrhoids. Dr. Adams did not examine the claimant's hemorrhoids and, as noted in Finding 3, the hemorrhoids do not rise to the level of a severe impairment. Finally, the undersigned accepts Dr. Adams' less restrictive standing/walking assessment (stand/or walk at least 2 hours in an 8-hour workday) over that of Dr. Sanner (stand and/or walk less than 2 hours of an 8-hour workday) because their examinations were almost entirely unremarkable, with only an antalgic gain and abnormal mobility observed.

R. 18.

As for Plaintiff's ability to stand and/or walk, Plaintiff notes that he has a "seventeen year history of diagnosis and treatment of severe foot disease." Plaintiff's Brief at p. 16. That fact is not in dispute. However, both Dr. Adams' and Dr. Sanner's examinations support the determination that Plaintiff could stand and/or walk for two hours total in an eight-hour workday despite his foot and back issues. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

During a September 2008 consultative examination, Dr. Sanner noted that Plaintiff had warts on his feet but no lesions or rashes. R. 220. Plaintiff's back was symmetric with no spinal tenderness or spasms, no bony abnormalities, and normal range of motion. R. 221. He had 5/5 strength in all major muscle groups. R. 221. He had negative straight leg raises, and he got up out of the chair and onto and off the examining table without difficulty. R. 221, 223. His station was normal, but he had an antalgic gait and abnormal mobility due to pain in his feet. R. 221.

In July 2010, Dr. Adams noted that Plaintiff's back was symmetric with no bony abnormalities, spinal tenderness, or spasms. R. 295. He had equal muscle strength, entirely normal range of motion, and negative straight leg raises. R. 296-97. His gait, station, and mobility were normal R. 296. Thus, as the ALJ found, the two consultative examinations were almost unremarkable, and Dr. Adams' opinion limiting Plaintiff to standing/walking at least two hours a day sufficiently accounted for Plaintiff's limitations in walking/standing.

Additionally, the other objective medical evidence supports the ALJ's residual functional capacity finding. Plaintiff sought treatment with the Department of Veterans Affairs ("VA") in 2008, 2009, and 2010 for painful calluses. R. 231, 252-54, 258-59, 266-67, 273-74, 335-36, 350-51. The podiatrist found painful keratotic lesions over multiple regions of both feet, high arch type foot, bilateral fifth hammertoe, and corns. R. 231, 252-54, 258, 266, 273, 335, 350. Plaintiff had a high instep and ambulated with an adducted gait and a slight heel inversion. R. 231, 252-54, 258, 266, 273, 335, 350. At each visit, Plaintiff was treated with hypertrophic nail debridement and reduction of callus tissue and was prescribed

a 40% urea cream and a mineral oil/hydrophilic petrolatum ointment. R. 231, 252-54, 259, 267, 274, 336, 351.

In July 2008, Plaintiff was fitted for custom cork and leather orthotics with arch support. R. 250. Plaintiff reported short-term relief with his orthotics and some improvement with the urea ointment. R. 325, 335. Throughout his treatment, his pulses were intact in both feet and he had no edema, claudication, deformity, or decrease in protective sensation. R. 231, 252-54, 258, 266, 273-74, 336, 351.

In August 2008 and March 2009, Plaintiff denied experiencing any pain in his feet, and his gait and balance were normal. R. 238, 242, 268-69. However, he reported a foot pain rating of 10 on a 10-point scale (yet "acceptable") in September 2009. R. 263. In October 2009 and January 2010 the podiatrist noted that Plaintiff's calluses prevented his walking or standing for prolonged periods without pain and discomfort. R. 258, 350. The treating podiatrist noted in 2010 that Plaintiff's foot lesions made it unlikely that he could comfortably stand for greater than one hour at a time. R. 326, 336. However, the podiatrist did not specify a limit on Plaintiff's total time standing. R. 326, 336. This assessment and the treatment records support the ALJ's finding limiting Plaintiff to sedentary work and two hours total of standing or walking to accommodate his foot impairment.

Plaintiff's treatment records establish that Plaintiff had low back pain to a degree, but it was treated conservatively with pain medication, back brace, and physical therapy. The ALJ accounted for the back pain by limiting Plaintiff to sedentary work. See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii); see also Blacha v. Secretary, 927 F.2d 228, 231 (6th Cir.

1990) (holding that the claimant's conservative treatment undercut her subjective complaints of pain).

In March 2009, Plaintiff sought evaluation and treatment at the VA for low back pain that had been occurring for one month. R. 267. He reported that his pain was worse with sitting and standing, he had no leg weakness, and the pain went away when he used Tylenol 3, a narcotic pain reliever. R. 267, 269. Plaintiff had normal muscle bulk, gait, and balance and negative straight leg raises, and he was able to heel and toe walk. R. 268. The VA physician prescribed pain medication and muscle relaxers and recommended that Plaintiff use a back brace. R. 268. In September 2009, Plaintiff reported that his low back pain was all right with medication and he had no weakness in his legs. R. 259. An x-ray of Plaintiff's lumbar spine taken in 2009 was normal, and the VA physician recommended that Plaintiff continue using the medication and back brace. R. 261.

In February 2010, Plaintiff had normal muscle bulk, negative straight leg raises, 5/5 motor strength, and intact sensation. R. 343. A lumbar MRI showed mild degenerative disc disease at LS-Sl but was otherwise "completely normal." R. 292.

During physical therapy, Plaintiff had 75% range of motion in the lower back due to muscle tightness, normal postural alignment, negative straight leg raises, normal balance and gait, but positive SI joint tenderness. R. 319. In November 2010, Plaintiff denied having any back or joint pain. R. 356. His gait and muscle strength were normal. R. 356. Also, in February and May 2010, Ghazala Khan, M.D., who was treating Plaintiff's low back pain,

prepared a letter for Plaintiff's employer stating that Plaintiff should be limited to sedentary work, which supports the ALJ's residual functional capacity finding. R. 330, 343.

Based on this evidence, the court finds that the ALJ did not arbitrarily reject Dr. Sanner's opinion for that of Dr. Adams' as to Plaintiff's ability to stand and/or walk.

The ALJ accepted Dr. Sanner's opinion regarding sitting, noting that Dr. Adams' opinion was not based on an examination of Plaintiff's hemorrhoids and the objective evidence did not establish that Plaintiff's hemorrhoids were a severe impairment. Although Dr. Adams advised limitations on sitting based on Plaintiff's history of hemorrhoids, the objective medical evidence in the record supports that Plaintiff could sit with no restrictions.

In September 2006, Plaintiff reported rectal irritation and blood in his stools, which the medical provider determined was a flare-up of internal hemorrhoids that previously had been observed on colonoscopy in 1996. R. 200. Plaintiff again reported rectal bleeding in October 2006, and an examination noted rectal tenderness but no blood in his stool. R. 198. Plaintiff was prescribed over the counter medication both times. R. 199, 201.

In July 2008, he reported "off and on" crampy abdominal pain with long term intermittent rectal bleeding R. 246. He explained that he would have rectal bleeding for a few days and then it would go way; sitz baths helped. R. 246. On examination, he had scant blood tinged mucous in his stool but no rectal masses or tenderness. R. 247-48. The physician prescribed hemorrhoidal rectal suppositories and recommended that Plaintiff have another colonoscopy. R. 229, 249. In August 2008, Plaintiff was seen for a re-check of his rectal bleeding but declined a rectal examination and stated that his last episode was a few days

earlier. R. 236, 238. A colonoscopy performed in October 2008 revealed a hyperplastic colon polyp, and Plaintiff was told to have another colonoscopy in ten years. R. 233, 268. In March and September 2009, and February and May 2010, Plaintiff stated that he had no recent rectal bleeds or other gastrointestinal concerns. R. 259, 261, 267-68, 330, 343.

Thus, the medical evidence documents only intermittent flare-ups of internal hemorrhoids that were treated conservatively. Accordingly, contrary to Plaintiff's assertion, the ALJ did not arbitrarily reject Dr. Adams' opinion for that of Dr. Sanner's, but based his decision on a review of the entire medical record. Substantial evidence supports the ALJ's decision to credit Dr. Sanner's opinion regarding Plaintiff's ability to sit.

The ALJ properly evaluated Dr. Adams' and Dr. Sanner's assessments and gave sufficient reasons for the weight given their opinion. As the Sixth Circuit has stated, Plaintiff's "argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual finding." Mullins v. Secretary, 836 F.2d 980, 984 (6th Cir. 1987).

Because there is substantial evidence in the record supporting the Commissioner's decision denying Plaintiff's applications for benefits, the decision of the Commissioner is AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE